No. 14-30295
_____

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
_____

UNITED STATES
Plaintiff – Appellee
v.
STACEY JACKSON
Defendant – Appellee

THE TIMES-PICAYUNE, L.L.C.,
doing business as NOLA Media Group,
Movant - Appellant
_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA
Criminal Action No. 13-131 "S" (2)
The Honorable Judge Mary Ann Vial Lemmon
_____

## BRIEF OF MOVANT-APPELLANT, THE TIMES-PICAYUNE, L.L.C.
_____

Loretta G. Mince, #25796
Rebecca Sha, #35317
FISHMAN HAYGOOD PHELPS
  WALMSLEY WILLIS & SWANSON, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana  70170-4600
Telephone:  (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for The Times-Picayune, L.L.C.*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th Cir. R. 28.2.1, undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Plaintiff – Appellee:
    The United States
Counsel for Plaintiff – Appellee:
    Fred Patrick Harper, Jr.
        U.S. Department of Justice
    Sharan E. Lieberman
        U.S. Department of Justice
    Kevin G. Boitmann
        U.S. Department of Justice
    Diane Hollenshead Copes
        U.S. Department of Justice
Defendant-Appellee:
    Stacey Jackson
Counsel for Defendant-Appellee:
    Edward Joseph Castaing, Jr.
        Crull, Castaing & Lilly, L.L.P.
    Deborah Pearce
        Appellate Law Offices of Deborah A. Pearce
Movant-Appellant:
    The Times-Picayune, L.L.C.
Counsel for Movant-Appellant:
    Loretta G. Mince
        Fishman Haygood Phelps Walmsley Willis & Swanson,  L.L.P
    Rebecca Sha
        Fishman Haygood Phelps Walmsley Willis & Swanson,  L.L.P

*/s/ Loretta G. Mince*
Loretta G. Mince
Date: June 5, 2014

i

## STATEMENT REGARDING ORAL ARGUMENT

The Times-Picayune, L.L.C. ("The Times-Picayune") requests oral argument for this appeal. This appeal presents an important issue of first impression for this Court: What showing is required to overcome the First Amendment right of anonymous speech and compel disclosure of identifying information regarding individuals who anonymously commented about a public figure in the "comments" section under an online news story regarding alleged wrongdoing by a public official? Given the important and potentially far-reaching implications of the issue presented, appellant submits that oral argument will assist the Judges of the panel assigned to this appeal with their analysis of the issue. *See* Fed. R. App. P. 34(a)(1).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF CONTENTS .................................................................................... iii

TABLE OF AUTHORITIES ………………………………………………....v

JURISDICTIONAL STATEMENT ..................................................................... 1

STATEMENT OF THE ISSUE ........................................................................... 4

STATEMENT OF THE CASE ............................................................................ 5

   A.     NATURE OF THE CASE AND PROCEEDINGS BELOW ..................... 5

      i.  Defendant's Motion to Compel................................................. 6

      ii.  The Subpoena ............................................................................ 7

      iii.  Magistrate Judge's Order......................................................... 9

      iv.  District Court's Order and Subsequent Findings................................ 10

      v.  Defendant's Motion to Dismiss ............................................. 12

   B.     STATEMENT OF FACTS RELEVANT TO ISSUES PRESENTED FOR REVIEW ........................................................................................................ 14

      i.  Nola.com and News Forum ..................................................... 14

      ii.  The News Article and the Comments of the Anonymous Speakers....... 15

SUMMARY OF ARGUMENT ......................................................................... 18

STANDARD OF REVIEW ............................................................................... 21

ARGUMENT ..................................................................................................... 22

   A.     THE DISTRICT COURT'S ORDER IS ERRONEOUS AS A MATTER OF LAW. ........................................................................................................ 22

      i.  "Aircheck" and "jammer1954" engaged in protected anonymous political speech. ..................................................................................... 22

      ii.  Federal Rule of Criminal Procedure 17(c) and First Amendment interests. ………………………………………………………………..25

      iii.  Standard for quashing subpoena duces tecum where First Amendment anonymous speech rights are implicated. ..................................................... 27

      iv.  The comments, even if made by federal officials, would only be relevant if Defendant could demonstrate that they prejudiced her indictment. ............ 30

      v.  The district court erred in failing to make a threshold finding that the

speech was unlawful before it balanced the interests in disclosure against the speakers' First Amendment rights. ................................................................ 31

vi.    The district court erred in holding that an *in camera* review is sufficient to protect First Amendment anonymous speech rights. ................................. 37

CONCLUSION ................................................................................................ 40

CERTIFICATE OF SERVICE............................................................................. 41

CERTIFICATE OF COMPLIANCE ................................................................. 42

# TABLE OF AUTHORITIES

*Acosta v. Tenneco Oil Co.*,

    913 F. 2d 205 (5th Cir. 1990)............................................................1

*Bailey v. Morales*,

    190 F.3d 320 (5th Cir. 1999).........................................................21

*Bank of Nova Scotia v. United States*,

    108 S.Ct. 2369 (1988)...................................................................30

*Boos v. Barry*,

    485 U.S. 312, 322 (1988) .............................................................25

*Caswell v. Manhattan Fire & Marine Ins. Co.*,

    399 F.2d 417 (5th Cir. 1968)...........................................................1

*Church of Scientology of California v. United States*,

    506 U.S. 9, 113 S.Ct. 447, 121 L.Ed F.2d 313 (1992)......................2

*Columbia Ins. Co. v. Seescandy.com*,

    185 F.R.D. 573 (N.D. Cal. 1999) ............................................28, 29

*Dendrite Int'l, Inc. v. Doe No. 3*,

    342 N.J. Super. 134, 775 A.2d 756 (N.J. App. Div. 2001) ...... 27, 28, 29, 32, 33

*Doe I v. Individuals*,

    561 F. Supp. 2d 249 (D. Conn. 2008) .....................................28, 29

*Doe v. 2TheMart.com Inc.*,

    140 F. Supp. 2d 1088 (W.D. Wash 2001) .......................................23

*Doe v. Cahill*,

    884 A. 2d 451 (Del. 2005) .................................................23, 28, 29

*Enterline v. Pocono Medical Center*,

    751 F. Supp. 2d 782 (M.D. Pa. 2008)...............................................9

*Flynn v. Giarrusso*,

    321 F. Supp. 1295 (E.D. La. 1971) ................................................23

*Global Telemedia Intern., Inc. v. Doe 1*,

   132 F. Supp. 2d 1261 (C.D. Cal. 2001) .........................................29

*Hernandez v. Cremer*,

   913 F.2d 230 (5th Cir. 1990)..............................................................3

*Highfields Capital Management, L.P. v. Doe*,

   385 F. Supp. 2d 969 (N.D. Cal. 2005)............................................28

*In re Anonymous Online Speakers*,

   661 F.3d 1168 (9th Cir. 2011).........................................................23

*In re Baxter*,

   01-00026-M, 2001 WL 34806203 (W.D. La. Dec. 20, 2001)...............27, 29, 34

*In re Beef Indus. Antitrust Litig.*,

   589 F.2d 786 (5th Cir. 1979)..............................................................1

*In re Grand Jury 87-3 Subpoena Duces Tecum*,

   955 F.2d 229 (4th Cir. 1992)............................................................26

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. 1461 et*

   *seq.*,706 F. Supp. 2d 11 (D.D.C. 2009) ............................................26

*In re Grand Jury Proceedings*,

   43 F.3d 966 (5th Cir. 1994)................................................................1

*In re Grand Jury Proceedings*,

   776 F.2d 1099 (2d Cir.1985)...........................................................26

*In re Grand Jury Subpoena Dated December 17, 1996*,

   148 F.3d 487 (5th Cir. 1998).............................................................2

*In re Grand Jury Subpoenas Duces Tecum*,

   78 F.3d 1307 (8th Cir.1996).............................................................26

*Indep. Newspapers, Inc. v. Brodie*,

   966 A.2d 432 (2009).......................................................................29

*J&B Entm't, Inc. v. City of Jackson*,

152 F.3d 362 (5th Cir. 1998) ..........................................................................21

*Johnston v. City of Houston, Tex.*,

14 F.3d 1056 (5th Cir. 1994)..........................................................................23

*Justice for All v. Faulkner*,

410 F.3d 760 (5th Cir. 2005)..........................................................................22

*Krinsky v. Doe*,

159 Cal. App. 4th 1154 (2008)..................................................................23, 29

*LLEH, Inc. v. Wichita Cnty., Tex.*,

289 F.3d 358 (5th Cir. 2002)..........................................................................21

*McIntyre v. Ohio Elections Comm'n*,

514 U.S. 334 (1995)........................................................................................22

*Meyer v. Grant*,

486 U.S. 414 (1998)........................................................................................23

*Mortgage Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.*,

160 N.H. 227, 999 A.2d 184 (2010)................................................................28

*Nebraska Press Association v. Stuart*,

427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976) ..................................26

*New York Times Co. v. Jascalevich*,

439 U.S. 1331 (1978) (Marshall, J., in chambers) ..........................................38

*New York Times Co. v.Sullivan*,

376 U.S. 254, 84 S. Ct. 710 (1964) ................................................................23

*Pilchesky v. Gatelli*,

2011 PA Super 3, 12 A.3d 430 (Pa. Super. Ct. 2011)......................................28

*Quixtar Inc v. Signature Mgmt. Team, LLC*,

566 F. Supp. 2d 11205 (D. Nev. 2008) ..........................................................28

*Reno v. Am. Civil Liberties Union*,

521 U.S. 844 (1997)..................................................................................22, 23

*Sony Music Entm't Inc v. Does 1-40*,

    326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004) ...............................................28, 29

*Snyder v. Phelps*,

    131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011)......................................................25

*Talley v. California*,

    362 U.S. 60 (1960)..........................................................................................22

*United States v. Anzelmo*,

    319 F. Supp. 1106, 1113 (E.D. La. 1970) ......................................................30

*United States v. Arditti*,

    955 F.2d 331 (5th Cir. 1992)...........................................................................25

*United States v. Bowen, et al.*,

    No. 10-204 (E.D. La. 2013) ............................................................ 3, 6, 31, 33

*United States v. Civella*,

    648 F.2d 1167 (8th Cir. 1981)........................................................................30

*United States v. Cuthbertson*,

    630 F.2d 139 (3d Cir. 1980).....................................................................26, 38

*United States v. Fischel*,

    686 F.2d 1082 (5th Cir. 1982)........................................................................25

*United States v. Gambino*,

    741 F. Supp. 412 (S.D.N.Y. 1990) .................................................................38

*United States v. Howard et. al.*,

    No. 12-00001 (E.D. La. Feb. 21, 2014) ...........................................................3

*United States v. McKenzie*,

    678 F.2d 629 (5th Cir. 1982)....................................................................30, 34

*United States v. Nixon*,

    418 U.S. 683 (1974)....................................................12, 25, 27, 32, 33, 37, 38

*United States v. Reynolds*,

    345 U.S. 1, 73 S. Ct. 528, 97 L.Ed. 727 (1953) ...............................................38

*United States v. Zolin*,

    491 U.S. 554, 109 S. Ct. 2619, 105 L.Ed. 2d 469 (1989) .................................38

## STATUTES

28 U.S.C. § 1291.......................................................................................................1

28 C.F.R. § 50.2.....................................................................................................31

Fed. R. App. 32......................................................................................................42

Fed. R. Crim. P. 6 .............................................................6, 12, 14, 15,33, 34, 35

Fed. R. Crim. P. 17 ................................................................. 1, 8, 12, 25, 26, 27

## OTHER AUTHORITIES

First Amendment ............................................................................................passim

Sixth Amendment ..................................................................................................26

Bill of Rights ...................................................................................................22, 26

## JURISDICTIONAL STATEMENT

Pursuant to a judicially created exception to 28 U.S.C. § 1291, this Court has jurisdiction to hear an immediate appeal of the denial of a nonparty's motion to quash a subpoena *duces tecum*:

> A non-party may appeal an order denying his motion to quash when under the circumstances he would be otherwise denied an effective mode of review. An order requiring a nonparty to produce documents often will be final insofar as the nonparty is concerned. Moreover in many cases substantial prejudice may result from denying immediate appellate review.[1]

Further, this Court has jurisdiction under the collateral order doctrine under 28 U.S.C. § 1291 to consider the instant interlocutory appeal.[2]  This Court has used the collateral order doctrine to review discovery orders.[3]

The subpoena at issue in this appeal was issued in the Eastern District of Louisiana pursuant to Fed. R. Crim. P. 17(c).  The district court denied The Times-Picayune's motion to quash the subpoena on March 26, 2014.    After

---

[1] *Caswell v. Manhattan Fire & Marine Ins. Co.*, 399 F.2d 417, 422 (5th Cir. 1968) (internal citations omitted); s*ee also In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 788-89 (5th Cir. 1979) (observing that "[t]he Fifth Circuit has been lenient in hearing the appeals of nonparties" and citing cases).

[2] The collateral order doctrine permits immediate appeal of an order where: "(1) the order must finally dispose of a matter so that the district court's decision may not be characterized as tentative, informal or incomplete; (2) the question presented must be serious and unsettled; (3) the order must be separable from, and collateral to, rights asserted in the principal suit; and (4) there should generally be a risk of important and probably irreparable loss if an immediate appeal is not heard. *Acosta v. Tenneco Oil Co.*, 913 F. 2d 205, 207-08 (5th Cir. 1990).

[3] *See In re Grand Jury Proceedings*, 43 F.3d 966, 969 (5th Cir. 1994) (finding that requirements for invocation of the collateral order doctrine was satisfied for an order to turn over documents that the Court already had possession of and was planning to turn over to another party); *Acosta*, 913 F.2d at 208 (finding that discovery order requiring employee to submit to interview by vocational expert was appealable under collateral order doctrine).

1

unsuccessfully seeking stays of the order in the district court and in this Court, The Times-Picayune complied with the order under a full reservation of rights.

The rules outlined above support this Court's jurisdiction over the instant appeal notwithstanding that The Times-Picayune complied with the district court's order under a full reservation of rights. The proceedings before the district court relating to The Times-Picayune have concluded, and all further proceedings in the district court concern the trial of the charges against Defendant Stacey Jackson which are wholly unrelated to The Times-Picayune.

The Times-Picayune has a sufficient stake in the outcome of this matter and this Court can offer meaningful relief as the district court retains possession of the challenged documents which The Times-Picayune asserts are subject to First Amendment protection and were unlawfully obtained.[4]

Alternatively, the legal issue that The Times-Picayune faces is of the type which is too short in duration to be fully litigated prior to its cessation and The Times-Picayune will likely be subject to the same legal circumstances in the

---

[4] *See Church of Scientology of California v. United States*, 506 U.S. 9, 113 S.Ct. 447, 121 L.Ed F.2d 313 (1992), on remand to, 984 F.2d 988 (9th Cir. 1993) (finding that compliance with Internal Revenue Service summons directing the production of a taxpayer's records does not moot the taxpayer's appeal from a district court order enforcing compliance with the summons, because an appellate court may still grant the taxpayer meaningful relief by order the government to return all records and to destroy or return all copies of the records in its possession); *In re Grand Jury Subpoena Dated December 17, 1996*, 148 F.3d 487, 490 (5th Cir. 1998) ("A motion to quash a grand jury subpoena is not moot even though documents have been produced in compliance with the subpoena and turned over to the grand jury because a court can still grant a party some relief by ordering the return or destruction of the documents produced.").

future.[5]    Specifically, in the wake of the revelation that two Assistant U.S.

attorneys for the Eastern District of Louisiana were posting comments online

regarding various pending criminal prosecutions,[6] The Times-Picayune has

received multiple subpoenas seeking information regarding the identity of online

commenters.[7]    Under these circumstances, The Times-Picayune submits that it is

entitled to a resolution of the question presented in this appeal.

The Times-Picayune filed its appeal on March 31, 2014.  This appeal is

timely.

---

[5] *Hernandez v. Cremer*, 913 F.2d 230, 233-34 (5th Cir. 1990) ("A case may circumvent the mootness doctrine if the conduct about which the plaintiff originally complained is 'capable of repetition, yet evading review.' Conduct is capable of repetition if there is a reasonable expectation or a demonstrated probability that the same controversy will recur.").

[6] In *United States v. Bowen, et. al.*, No. 10-204 (E.D. La. 2013) (Rec. Doc. No. 1137), United States District Court Judge Kurt Engelhardt ordered investigations by special prosecutor, John Horn, which revealed that Assistant U.S. attorneys, Sal Perricone and Jan Mann made online comments on Nola.com about criminal defendants.

[7] For example, subsequent to the subpoena at issue in this appeal, Ms. Jackson subpoenaed The Times-Picayune for identifying information of another Nola.com commenter, "kefir." Rec. Doc. 140.  And in another case pending in the Eastern District of Louisiana, *United States v. Howard et. al.*, No. 12-00001 (E.D. La. Feb. 21, 2014), The Times-Picayune was subpoenaed for records relating to the identity of four anonymous online commenters.

3

## <u>STATEMENT OF THE ISSUE</u>

1.    Was the district court's order compelling production of identifying information regarding anonymous online speakers erroneous where the court failed to first determine that the Defendant had made a *prima facie* showing that the comments at issue were unlawful and would support her claims of prosecutorial misconduct?

## STATEMENT OF THE CASE

### A. NATURE OF THE CASE AND PROCEEDINGS BELOW

This appeal challenges the district court's March 26, 2014 order affirming the magistrate judge's ruling that The Times-Picayune must disclose, in response to a subpoena issued in the underlying criminal proceeding, private identifying information regarding two anonymous online commenters, "aircheck" and "jammer1954."

The underlying criminal proceeding is against Defendant Stacey Jackson ("Defendant"), who has been charged with conspiracy, solicitation of bribes, theft of federal funds, and obstruction of justice in connection with her public employment as the executive director of the New Orleans Affordable Homeownership agency ("NOAH").[8]   Defendant sought dismissal of her indictment on the basis that alleged prosecutorial misconduct may have violated her due process rights.   In support of her prosecutorial misconduct claim, Defendant requested that the district court order The Times-Picayune to disclose information concerning the identity of "aircheck" and "jammer1954," two anonymous posters who engaged in political speech about the investigation of Defendant and other public matters in comments they left under an August 2008 Nola.com news article titled, "N.O. Council Members Get Subpoenas for NOAH

---

[8] ROA.18. Citations to the Record on Appeal are designed "ROA.XX."

5

records."[9]   Defendant speculated that the anonymous posters may be federal officials and uncovering their identities "might lead to the conclusion that there was a pattern, policy or practice of pre-indictment prosecutorial misconduct."[10] The relevant procedural history giving rise to this appeal is set forth more fully below.

### i.   Defendant's Motion to Compel

The present dispute began when Defendant filed a motion to compel discovery wherein she requested the "Horn Reports"[11] and other information related to the investigation by the Department of Justice ("DOJ") of alleged grand jury leaks and other misconduct by Assistant U.S. Attorneys in the Eastern District of Louisiana.   Defendant argued that these items were material to her defense because they might support her claims of selective prosecution based upon her race, possible violations of grand jury secrecy requirements under Federal Rule of Criminal Procedure 6, and other alleged prosecutorial misconduct.[12]   In support of her motion, Defendant submitted the August 8, 2008 Nola.com article and 55 comments posted under the article by online commenters.[13]   Defendant pointed out that one of the individuals who posted under the August 8, 2008 news article was

---

[9] ROA.68-69.
[10] ROA.181.
[11] The "Horn Reports" were generated pursuant to an investigation into prosecutorial misconduct initiated by United States District Court Judge, Kurt Engelhardt, in an unrelated case, *United States v. Bowen, et. al.*, No. 10-204 (E.D. La. 2013) (Rec. Doc. No. 1137).
[12] ROA.69.
[13] ROA.100.

"campstblue," a pseudonym used by former Assistant U.S. Attorney, Sal Perricone who admitted to posting comments on Nola.com.[14]

After the magistrate judge conducted an *in camera* review of the "Horn Reports," he denied Defendant's request, finding that nothing in the reports was relevant to Defendant's claims of violations of grand jury secrecy or prosecutorial misconduct.[15]    Nevertheless, the magistrate judge *sua sponte*[16] singled out two posters who commented underneath the August 8 Nola.com article and observed:

> If that person or those persons who posed as "aircheck" or "jammer1954" were management-level Justice Department prosecutors or law enforcement officers responsible for office-wide policy making, or other Justice Department personnel involved directly in this case, the investigation and/or grand jury proceedings concerning Jackson or NOAH, especially if they were persons engaged in making public posts of the type quoted above, his or her identity might lead to the conclusion that there was a pattern, policy or practice of pre-indictment prosecutorial misconduct in the accusatory process material to Jackson's defenses alleging violations of her due process rights.[17]

Neither "aircheck" nor "jammer1954" were mentioned in the "Horn Reports."[18]

### ii. The Subpoena

On January 16, 2014, Defendant filed an *ex parte* motion for the issuance of a subpoena to The Times-Picayune ordering production of:

---

[14] ROA. 68-69.
[15] ROA.169.
[16] Defendant did not specifically point to the posts made by "aircheck" or by "jammer1954" in her motion.
[17] ROA.171.
[18] *Id.*

7

> All documents related to the identity of the user names, "aircheck," and "jammer1954," including but not limited to (1) registration information, documents that provide all names, mailing addresses, email addresses, downstream and upstream email chains, phone numbers, billing information, date of account creation, account information, passwords, and all other identifying information associated with "aircheck," and "jammer1954," and all names, aliases, identities or designations related to "aircheck," and "jammer1954," and (2) the usage/login information related to "aircheck," and "jammer1954," including but not limited to documents that provide IP and subsequent usage, computer usage logs, or other means of recording information concerning the usage of "aircheck," and "jammer1954," from January 1, 2008, to the present.[19]

Defendant argued that **if** the two anonymous posters are revealed to be management-level DOJ prosecutors or law enforcement officers, their comments **could** demonstrate a pattern, policy or practice of pre-indictment prosecutorial misconduct and be material to her due process defense.[20]    Because of that **possibility**, Defendant argued that The Times-Picayune should provide her with private information about their identities.

On January 21, 2014, the magistrate judge signed an order granting Defendant's motion,[21] and on January 23, 2014, The Times-Picayune was served with a subpoena ordering production of the above referenced materials.[22]    The Times-Picayune filed a motion to quash under Fed. R. Crim. P. 17(c)(2), arguing that the subpoena violated the First Amendment right of anonymous speech and

---

[19] ROA.175-76.
[20] ROA.181.
[21] ROA.189.
[22] ROA.190.

that Defendant had not made a sufficient showing to overcome that right.[23]

### iii.    Magistrate Judge's Order

On February 14, 2014, the magistrate judge granted in part and denied in part The Times-Picayune's motion.[24]  The magistrate judge agreed that The Times-Picayune had standing to assert the First Amendment rights of individuals who post anonymously on Nola.com,[25] but denied The Times-Picayune's request that the subpoena be quashed in its entirety.[26]  Instead, the magistrate judge ordered an *in camera* review,[27] explaining that he would determine whether the anonymous posters were or were not prosecutors:

> If I determine based upon my in camera review that aircheck and jammer1954 are citizens without connection to the prosecution, their First Amendment right to anonymous speech will outweigh the Due Process rights of the defendant and no further disclosure, production or inspection of the information will be permitted. Otherwise, whether and, if so, how and when the responsive information may be made

---

[23] ROA.192. Defendant filed her response on February 7, 2014, arguing that she had made a sufficient showing and that The Times-Picayune lacked standing. ROA.220.

[24] ROA.239.

[25] *Id. See Enterline v. Pocono Medical Center*, 751 F. Supp. 2d 782, 786 (M.D. Pa. 2008) (observing that a newspaper has sufficient injury to "assert the First Amendment rights of the anonymous commentators").

[26] ROA.248-49. The magistrate judge reasoned that Defendant's prior submission of evidence in support of her prosecutorial misconduct defense, buttressed by the recent experience of this Court in three, unrelated, proceedings, and the magistrate judge's own *in camera* review of the Horn Reports, supported a finding that Defendant had made the required threshold showing to overcome the First Amendment rights of "aircheck" and "jammer1954."  The magistrate judge concluded that the comments were likely to be made by federal officials because (1) the comments were made in close proximity to a comment made by former Assistant U.S. Attorney Sal Perricone under the pseudonym "campstblue"; (2) the comments used the same kind of "cop jargon lingo" sometimes employed by Mr. Perricone; and (3) "aircheck" was a frequent commenter, making approximately 500 posts, including 11 specifically targeting Defendant and NOAH.

[27] ROA.248.

available to the parties for inspection will be established by further order of the court.[28]

###    iv.    District Court's Order and Subsequent Findings

On February 28, 2014, The Times-Picayune moved the district court to review the magistrate judge's order.[29]  During oral argument on that motion, the district judge requested a list of other anonymous comments on Nola.com that specifically identified Defendant by name.  The Times-Picayune complied and provided a list containing 33 comments made by posters, other than "aircheck" or "jammer1954," who had commented online about Defendant.[30]   After oral argument, the district court also requested that the United States file a memorandum stating the procedural history of the grand jury investigation.  The memorandum revealed that the grand jury that indicted Defendant on June 6, 2013 was empaneled on December 19, 2012 – almost five years after the August 2008 "aircheck" and "jammer1954" comments.[31]

On March 26, 2014, the district court affirmed the magistrate judge's order, concluding that it "was not clearly erroneous or contrary to law."[32]   On March 31, 2014, The Times-Picayune filed a notice of appeal with the district court.[33]   The

---

[28] ROA.248-49.
[29] ROA.264. On March 12, 2014, Defendant filed a response (ROA.293) and on March 18, 2014, The Times-Picayune filed a reply memorandum (ROA.342).
[30] ROA.355-63.
[31] ROA.364-65.
[32] ROA.375.
[33] ROA.399.

Times-Picayune also simultaneously filed in this Court a petition for writ of mandamus and a motion for expedited appeal.[34]  This Court denied The Times-Picayune's petition for writ of mandamus, but granted The Times-Picayune's motion for expedited appeal.[35]  Although this Court ordered that the appeal be expedited, it denied The Times-Picayune's request that the order be stayed pending appeal.  After the district court and this Court refused to stay the order,[36] The Times-Picayune complied with the order under a full reservation of rights.

After the records on "aircheck" and "jammer1954" were delivered to the district court for *in camera* review, and First Amendment protected information was revealed to the district court and others, the district court issued four additional orders, all under seal, related to its investigation.[37]  Although the content of these orders is unknown, it is apparent that they disclosed the identity of "jammer1954" to the U.S. Attorney's office and others.[38]

Ultimately, the district court confirmed that "jammer1954" was a private citizen and therefore his or her identity was irrelevant to Defendant's prosecutorial

---

[34] ROA.577.

[35] *Id.*

[36] ROA.566; ROA.581.

[37] Rec. Doc. 149 "Sealing Order."

[38] ROA.692-93. "I have on this date separately issued and am providing only to counsel of record for the United States an order to aid the court in its determination of whether information it has gleaned from its in camera evaluation should be released to all parties;" *See also* Rec. Doc. 149.

misconduct claim.[39]  The district court's *in camera* investigation of "aircheck" was inconclusive, and his or her information was similarly found to be irrelevant to Defendant's claim:

> Since aircheck cannot be identified as a prosecutor or government agent connected to the investigation or prosecution of defendant, the court finds that the commenter's limited First Amendment right to anonymous speech on matters of public interest outweighs the defendant's Due Process rights.[40]

### v.    Defendant's Motion to Dismiss

On April 14, 2014, Defendant filed her substantive motion to dismiss her indictment based upon prosecutorial misconduct.  Similar to her Motion to Compel and Ex Parte Motion for Issuance of Subpoena Duces Tecum, Defendant argued that federal officials, through posting comments on Nola.com, "engaged in a pattern of conduct, demonstrating a peculiar unique system and intent to leak grand jury investigations, and attack African American citizens that were being

---

[39] ROA.722. ("the court finds that the person who commented anonymously under the pseudonym Jammer1954 was not an agent or employee of the United States Attorney's Office or any of the five governmental agencies involved in the investigation, grand jury proceedings or prosecution of this case.").

[40] Rec. Doc. 156 "Orders and Reasons on Discovery Matters." Defendant also requested the issuance of yet another set of subpoena to an anonymous blogger "kefir." Rec. Doc. 140 "Ex Parte Second Motion for Issuance of Subpoena Duces Tecum and Production Prior to Trial; Rule 17(c), Fed. R. Crim. P."  The Times-Picayune and the United States submitted consolidated responses and motions to quash. Rec. Doc. 153 "Times-Picayune Consolidated Opposition and Memorandum in Support of Motion to Quash;" Rec. Doc. 154 "Government's Memorandum in Opposition and Motion to Quash."  The district court determined that Defendant had not met her burden of proof under *Nixon* and denied the subpoena.  Rec. Doc. 156 "Orders and Reasons on Discovery Matters."

investigated by federal grand juries."[41]  On May 23, 2014, the district court **denied** the motion, holding that Defendant failed to "establish that this conduct affected her substantive rights by 'overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury.'"[42] Further, the district court held that Defendant had failed to demonstrate actual prejudice with regard to the comment made by Mr. Perricone because the comment was not "substantially different from many of the other comments posted in response to this article."[43]  The district court explained:

> It is **impossible** to say that the will of the Grand Jury was overborne by Perricone's one comment about Jackson, that . . . was anonymously posted almost five years before the indictment was returned by a Grand Jury that was not yet impaneled at the time Perricone made the comment.  Even when coupled with Perricone's other comments cited by Jackson, it is **illogical to conclude** that the will of all of the members of all of the six Grand Juries involved in the investigation and indictment of this case was so overborne by Perricone's comments, which were not known to have been made by an Assistant United States Attorney at the time the investigation was underway and the indictment returned, that the indictment was the will of the prosecutor rather than the Grand Jury.[44]

Importantly, with respect to the other anonymous comments posted in response to

---

[41] ROA.647. The magistrate judge has previously summarized Defendant's allegations of due process violations as: 1.) violations of grand jury secrecy under Fed. R. Crim. P. 6(e); 2.) prosecutorial misconduct undermining due process fairness principles in the accusatory process through violation of federal regulations and ethical rules applicable to prosecutors; 3.) selective prosecution based upon the defendant's race; and 4.) cumulative effect of the above. ROA.166-67.
[42] Rec. Doc. 158, p.7-8 "Orders and Reasons Motion to Dismiss."
[43] *Id*. p. 9.
[44] *Id*. p. 10 (emphasis added).

articles about Defendant and NOAH, including those by "aircheck" and "jammer1954," the district court found:

> Even if the court were to assume that other anonymous comments posted in response to articles about Jackson and NOAH on Nola.com were made by persons in the United States Attorney's Office's, there is no indication that any of the comments biased the six Grand Juries involved in the investigation, or particularly the one that actually returned the indictment in this case.[45]s

## B. STATEMENT OF FACTS RELEVANT TO ISSUES PRESENTED FOR REVIEW

### i. Nola.com and News Forum

The Times-Picayune is a news organization serving the Greater New Orleans area through its printed newspaper and its website, Nola.com. On Nola.com, private citizens have access to online news articles and are given the opportunity to discuss and respond to those articles and related issues by posting to a forum found on the same web page as the article. In order to post a comment, a Nola.com user must register by completing a sign-up form that requests identifying information including e-mail address, password, and user name. Nola.com users are given the opportunity to use a pseudonym, rather than their own names, and many do, for the purpose of commenting anonymously.

The Nola.com online news forum serves many purposes. The forum provides private citizens the opportunity to debate public issues as well as share their opinions and concerns. The Times-Picayune journalists also use the news

---

[45] *Id.* at 16.

forum to interact with users.

### ii.    The News Article and the Comments of the Anonymous Speakers

The underlying criminal action involves the highly publicized investigation into Defendant, a public official, and Defendant's public organization, NOAH. The public first learned of possible corruption within NOAH, including Defendant's involvement, in July 2008. Numerous articles and editorials were published on Nola.com regarding the matter prior to the article at issue in this appeal.[46] On August 8, 2008 at 6:09 PM, Nola.com published an online news article concerning the NOAH investigation under the headline, "N.O. Council Members Get Subpoenas for NOAH records."[47] The first paragraph of the article states that the New Orleans City Council's attorney reported that three members of the council received federal grand jury subpoenas seeking documents related to NOAH, and he expected the other four members would also be served.[48] Forty-four individuals posted anonymous comments under the news article; 55 comments

---

[46] *Council seeks files on home cleanups*, The Times-Picayune (July 24, 2008); *NOAH's site is sunk*, Gambit (July 25, 2008); *New Orleans house gutting program under a microscope*, The Times-Picayune (July 30, 2008); *New Orleans home rehab operation suspended*, The Times-Picayune (August 1, 2008); *Gutting mess fails smell test*, The Times-Picayune (August 3, 2008); *Waiting for answers on NOAH*, The Times-Picayune (August 8, 2008); *NOAH chief allowed her own property to molder*, The Times-Picayune (August 4, 2008); *City paid to gut houses set for razing*, The Times-Picayune (August 5, 2008); *Relief group saw no shortage of volunteers*, The Times-Picayune (August 6, 2008); *Mayor says NOAH probe reveals some "discrepancies,"* The Times-Picayune (August 7, 2007); *NOAH caught with its fancy drawers down*, The Times-Picayune (August 8, 2008).

[47] ROA.100-15. As an aside, the article does not disclose any confidential information, or information that would be protected by Fed. R. Crim. P. 6. All statements in the article are attributed to official sources.

[48] *Id.*

were made in total, including two comments by "aircheck" and "jammer1954."

> "Aircheck" on August 8, 2008 at 10:26 p.m. commented:
> *The "fun" has just begun . . . Wait until the next round of subpoenas go out, then arrests will follow a little while after that etc…*
> *Can't wait to hear about Stacey "ring leader" Jackson when it's her turn to face the music…expect to see her rat out a few to minimize prison time she's likely to get.*
> *Will be most interesting to see what SCUM rises to the top.*

> "Jammer1954" on August 9, 2008 at 9:48 p.m. commented:
> *Mark my words. The canaries are going to start singing, and Car 54 is going up in smoke. Stacey Jackson is going to rat out every one, every body, and every thing to make the best deal for herself- after all she did this as chief of NOAH so her behavior isn't going to change.*
> *RayRay is going down, as is Cedric and who knows who else.*
> *What is worse is that RayRay was going to clean up City Hall.*
> *He is "stuck on stupid."*

Numerous other posters commented under the article on the revelations of the investigations into NOAH and Defendant.[49]  Many of these comments are of the same content, language, and tone as those made by "aircheck" and "jammer1954:"

> **On August 8, 2008, "possomhd" commented:**
> *Did I not say this will get a lot better before it's over? If they dig deep enough it's hard telling what will come to the surface. Some people are sweating bullets right now. Nagin's days are numbered. When the singing begins it will be heard all over the U.S.A. Just today I had a fella from Houston tell me he thinks N.O. is a scum hole. We're famous, folks! We have the best politicians money can buy.*
> **On August 8, 2008, "leveeliar" commented:**
> *Federal funds for relatives, insider dealings and not dispensing funds according to federal requirements means big problems. Who is going to rat out first.*
> **On August 8, 2008, "stormyd" commented:**
> *CONFIRMED! Nagin was subpoena's too! Too early to crack the*

---
[49] ROA.355-63.

16

*champagne. But if anyone can give us a victory and get that buffoon out of office, Letten can!*

**On August 8, 2008, "katrina115" commented:**
*I got information from my sources that nagin got a subpoena, shhhhhh it's a secret, its not really a secret but he really did get a subpoena and it shows that he is hiding from the city and must be removed.*

**On August 8, 2008, "moshuluu" commented:**
*The grapevine still works folks, and I heard through it, the judge's fingers were so cramped from signing so many warrants/subpoenas he had to take a break. . .*

**On August 8, 2008, "togozo" commented:**
*i can't wait to see that pompas azz Da trashbag mayor mumble his way out of a FEDERAL investigation, ...*

On August 8, 2008, "urantia" commented:
*When that "SCUM" rises to the top, wonder if Wonka will be at the top of the heap???*

On June 6, 2013, nearly five years after the publication of the August 8, 2008 article and the comments made by "aircheck" and "jammer1954," Defendant was indicted by a grand jury that was impaneled in December 2012.[50]  From August 2008 until the indictment was filed on June 6, 2013, The Times-Picayune published dozens more articles about Defendant and NOAH on Nola.com and hundreds of comments were posted by other anonymous bloggers in response, including at least 33 comments that directly reference to Defendant by name.[51]

---

[50] ROA.364-65.
[51] *See infra* pp. 34-35.

## SUMMARY OF ARGUMENT

The district court erred by compelling disclosure of identifying information regarding "aircheck" and "jammer1954" without first determining whether Defendant had made a *prima facie* showing that their comments, even if made by federal officials, were unlawful and would support her claims of prosecutorial misconduct. The district court also erred in finding that an *in camera* review was sufficient to protect the two posters' First Amendment rights where a threshold showing warranting infringement of those rights was not made.

The anonymous comments by "aircheck" and "jammer1954" consisted of political speech on a matter of public concern which is afforded the highest degree of First Amendment protection. Actual infringement of the right to speak anonymously occurs when the speaker loses his or her anonymity. Courts have found that infringement of the right is justified only where a threshold showing of the unlawfulness of the speech has been made. Here, the district court impermissibly invaded the First Amendment right of anonymous speech by ordering disclosure without first requiring Defendant to make a threshold showing that the comments were unlawful, including that the comments could have prejudiced Defendant's indictment.

The First Amendment right of "aircheck" and "jammer1954" was violated when his or her identity was unnecessarily revealed to any person, including those

18

employed by the court or by law enforcement. That right was violated when the district court disclosed identifying information of "aircheck" to unknown individuals under sealed orders during its *in camera* investigation. It was violated when the magistrate judge and district judge learned the name of "jammer1954." It was violated when the district court shared the name of "jammer1954" with members of the U.S. Attorney's Office and others to whom the court directed orders as part of his *in camera* inquiry. It was violated when members of the judicial staff learned of the identifying information.

As the district court ultimately concluded after ordering disclosure of information regarding "aircheck" and "jammer1954," the comments were benign; even if made by federal officials, they could not have caused prejudice to Defendant's indictment because they did not identify the speaker as a federal official, did not contain grand jury secrecy information, and were of the same content, language, and tone as the hundreds of other comments posted under the same article and the numerous related articles about investigations into Defendant for public corruption:

> Even if the court were to assume that other anonymous comments posted in response to articles about Jackson and NOAH on Nola.com were made by persons in the United States Attorney's Office's, there is no indication that any of the comments biased the six Grand Juries involved in the investigation, or particularly the one that actually

returned the indictment in this case.[52]

By making this conclusion, the district court concedes that there was an insufficient basis for ordering disclosure in the first place.

For these reasons, discussed further below, the Court should vacate the district court's order which compelled The Times-Picayune to produce the private, identifying information of "aircheck" and "jammer1954" and order that the records be returned.

---

[52] Rec. Doc. 158 at 16.

## **STANDARD OF REVIEW**

This appeal presents an important question of what showing is required to overcome the First Amendment right of anonymous speech and compel disclosure of identifying information regarding individuals who anonymously commented online about a public figure in the "comments" sections under a news story regarding alleged wrongdoings by public officials. Because the question presented is a mixed question of law and fact, this Court's review is *de novo*.[53]

---

[53] *LLEH, Inc. v. Wichita Cnty., Tex.*, 289 F.3d 358, 364 (5th Cir. 2002) ("Whether ... free speech rights have been infringed is a mixed question of law and fact.") (quoting *J&B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 369 (5th Cir. 1998)); *Bailey v. Morales*, 190 F.3d 320, 322 (5th Cir. 1999) ("Recognizing that first amendment problems present intertwined questions of law and fact, Fifth Circuit precedent prescribes de novo review of the district court's order.").

## ARGUMENT

## A. THE DISTRICT COURT'S ORDER IS ERRONEOUS AS A MATTER OF LAW.

### i. "Aircheck" and "jammer1954" engaged in protected anonymous political speech.

The United States Supreme Court has long recognized that First Amendment protections should be afforded to anonymous speech. In *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342, 357 (1995), the Court observed that:

> [A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.

The Court offered as an example anonymous pamphleteering, which it called an "honorable tradition."[54]

Anonymous speech on the Internet receives the same First Amendment protection as anonymous speech in any other forum. The Supreme Court has recognized that there is "no basis for qualifying the level of First Amendment scrutiny that should be applied" to online speech.[55] Courts have consistently held

---

[54] *Id.* at 357 ("Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the tyranny of the majority. It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation -- and their ideas from suppression -- at the hand of an intolerant society.")
*See Talley v. California*, 362 U.S. 60, 64-65 (1960) ("Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. . . . Even the Federalist Papers, written in favor of the adoption of our Constitution, were published under fictitious names. It is plain that anonymity has sometimes been assumed for the most constructive purposes."); *Justice for All v. Faulkner*, 410 F.3d 760, 764 (5th Cir. 2005) ("As a general proposition, anonymous speech is protected by the First Amendment.").
[55] *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997).

that First Amendment protection extends to anonymous Internet speech.[56]

While the right to speak anonymously is not unlimited, the degree of protection varies on the circumstances and the type of speech at issue.[57] Political speech, given its importance in the history of this country, is afforded the highest level of protection.[58] As the Supreme Court has recognized:

> [There is a] background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.[59]

Similarly, this Court has acknowledged that "[t]he right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is the central meaning of the First Amendment."[60]

---

[56] *Doe v. Cahill*, 884 A. 2d 451, 456 (Del. 2005) ("It is clear that speech over the internet is entitled to First Amendment protection.") (citing *Reno v. ACLU*, 521 U.S. 844 (1977)); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash 2001)); *Krinsky v. Doe*, 159 Cal. App. 4th 1154, 1163 (2008).

[57] *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("[T]he degree of scrutiny varies depending on the circumstances and the type of speech at issue. Given the importance of political speech in the history of this country, it is not surprising that courts afford political speech the highest level of protection.").

[58] *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1998) (describing the First Amendment protection of "core political speech" to be "at its zenith").

[59] *New York Times Co. v.Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964).

[60] *See Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1061 (5th Cir. 1994) ("The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is the central meaning of the First Amendment."); *Flynn v. Giarrusso*, 321 F. Supp. 1295, 1297-98 (E.D. La. 1971) ("every citizen has the First Amendment right to criticize public officials on their official conduct and to comment on matters of public interest. The reason such speech is protected by the First Amendment is because full discussion of public affairs is the cornerstone of self government and our democracy.").

In light of the foregoing and as recognized by the district court,[61] important First Amendment rights are implicated by a subpoena seeking to "out" an online speaker. The anonymous posters "aircheck" and "jammer1954" chose to exercise their right to speak out, anonymously, about a public official. The matter of which they spoke – the ongoing investigation into allegations of Defendants' corruption and improper use of public funds – was a matter of public concern. Their anonymous comments are entitled to the highest First Amendment protection; a party wishing to unveil the two posters has a very high burden to carry.

While the district court recognized that the anonymous speakers had First Amendment rights, it did not properly consider the type of speech the speakers engaged in when it ordered disclosure of their identities. Instead of affording heightened protection because of the political nature of the comments, the district court focused on what it perceived to be the "offensive" tone of the comments in supporting its decision to compel disclosure. For example, the magistrate judge described the comments made by "aircheck" and "jammer1954" as "[a]mong the most egregious" of the comments posted under the news article about Defendant.[62] However, the law is clear that speech does not lose its First Amendment protection merely because some may find it "egregious;" indeed, the Supreme Court has held

---

[61] ROA.374. ("In this case, the magistrate judge properly found that the bloggers have a First Amendment right to anonymous speech.").
[62] ROA.167.

that repugnant or outrageous speech most deserves First Amendment protections.[63]

Thus, the district court erred in not properly considering the political character of

the comments by the anonymous speakers.

### ii.   Federal Rule of Criminal Procedure 17(c) and First Amendment interests.

In addition to the foregoing, discovery in criminal cases is narrowly

limited.[64]   Federal Rule of Criminal Procedure 17 "governs the issuance of

subpoenas *duces tecum* in federal criminal proceedings."[65]   Section (c)(2) provides

that a subpoena may be quashed if compliance would be unreasonable or

oppressive.[66]   When a party challenges a Rule 17(c) subpoena, courts apply the test

announced in *United States v. Nixon*, for which the party seeking access to material

under Rule 17 must show: (1) the subpoenaed document is relevant; (2) it is

admissible; (3) it has been requested with adequate specificity; and (4) that the

application is made in good faith and is not intended as a general "fishing

expedition."[67]   Courts have held that a Rule 17 subpoena is not a "discovery

device" meant to allow parties to find broad categories of information.[68]

---

[63] *Snyder v. Phelps*, 131 S. Ct. 1207, 1219, 179 L. Ed. 2d 172 (2011) ("'[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment.'") (quoting *Boos v. Barry*, 485 U.S. 312, 322 (1988)).
[64] *United States v. Fischel*, 686 F.2d 1082, 1090 (5th Cir. 1982).
[65] *United States v. Nixon*, 418 U.S. 683, 698 (1974).
[66] Fed. R. Crim. P. 17.
[67] *Nixon*, 418 U.S. at 697-702; *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992).
[68] *Arditti*, 955 F.2d at 345.

First Amendment rights and privileges must also be considered in determining whether compliance with a subpoena issued under Rule 17 would be unreasonable or oppressive.[69]  These interests "are not diminished because the nature of the underlying proceeding out of which the request for the information arises is a criminal trial."[70]  In addition, a criminal defendant's constitutional interests do not, as a matter of course, outweigh competing First Amendment interests.  The Supreme Court has stated that:

> The authors of the Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights, ranking one as superior to the other. . . . [I]f the authors of these guarantees, fully aware of the potential conflicts between them, were unwilling or unable to resolve the issue by assigning to one priority over the other, it is not for us to rewrite the Constitution by undertaking what they declined to do.[71]

Several courts have required a higher threshold showing than mere relevancy where First Amendment rights are implicated.[72]

Here, First Amendment anonymous speech rights are imperiled by the

---

[69] *E.g., In re Grand Jury 87-3 Subpoena Duces Tecum*, 955 F.2d 229, 234 (4th Cir. 1992) (recognizing that if a grand jury subpoena under Rule 17(c) potentially implicates First Amendment freedoms, district courts should apply with special sensitivity the traditional rule that grand juries are not licensed to engage in arbitrary fishing expeditions).

[70] *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980).

[71] *Nebraska Press Association v. Stuart*, 427 U.S. 539, 561, 96 S. Ct. 2791, 2803, 49 L. Ed. 2d 683 (1976).

[72] *See In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d 1307, 1312 (8th Cir.1996); *In re Grand Jury Proceedings*, 776 F.2d 1099, 1102–1103 (2d Cir.1985); *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. 1461 et seq.*, 706 F. Supp. 2d 11, 18 (D.D.C. 2009) (Holding that in order to survive a First Amendment challenge to a subpoena, "the government must show that they have a compelling interest in obtaining the sought-after material and that there is a sufficient nexus between the subject matter of the investigation and the information they seek.").

subpoenas because loss of anonymity is the very right that is imperiled by a subpoena to produce the identities of the speakers. First Amendment considerations of this case combined with the political nature of the speech require a higher threshold showing than mere relevancy under *Nixon* to quash a subpoena *duces tecum* under Fed. R. Crim. P. 17(c).

### iii. Standard for quashing subpoena duces tecum where First Amendment anonymous speech rights are implicated.

In consideration of the importance of the rights associated with anonymous speech and the competing interests of disclosure in certain situations, courts across the country have formulated various, but similar, approaches when deciding whether invasion of the right to speak anonymously is warranted.[73]   In one of the earliest, and most influential, cases that addressed the issue of unveiling the identity of an anonymous internet speaker, *Dendrite Int'l, Inc. v. Doe No. 3*, the court set out a four-factor test for determining whether a subpoena seeking identification of anonymous posters would be proper.[74]   The requirements were formulated "to ensure that this unusual procedure will only be employed in cases where the [party seeking the information] has in good faith exhausted traditional avenues for identifying [an anonymous poster] pre-service, and will prevent use of

---

[73] *In re Baxter*, 01-00026-M, 2001 WL 34806203 at *11 (W.D. La. Dec. 20, 2001).
[74] 342 N.J. Super. 134, 141, 775 A.2d 756, 767 (N.J. Super. Ct. App. Div. 2001).

this method to harass or intimidate."[75]

First, the seeking party must "undertake efforts to notify the anonymous posters that they are the subject of a subpoena or application for an order of disclosure, and withhold action to afford the fictitiously-named defendants a reasonable opportunity to file and serve opposition to the application." Second, the seeking party must identify and set forth the exact statements purportedly made by each anonymous poster that he or she alleges constitutes actionable speech. Third, the seeking party must also make a *prima facie* showing that he or she has a viable legal claim and that the speaker's identity is necessary to present that claim. Finally, if the seeking party makes the required *prima facie* showing, the court should balance the anonymous individual's First Amendment right of anonymous free speech against the strength of the *prima facie* case presented and the necessity for the disclosure of the anonymous individual's identity to allow the seeking party to properly proceed.[76]

Since *Dendrite*, courts have generally followed its formulation or have formulated similar tests.[77] With respect to the requirement that the seeking party

---

[75] *Id.*

[76] *Id.* at 151-152.

[77] *See Doe I v. Individuals,* 561 F. Supp. 2d 249, 256 (D. Conn. 2008) (applying *Dendrite* factors*); Mortgage Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.,* 160 N.H. 227, 239, 999 A.2d 184, 193 (2010) (holding that the trial court should have applied the *Dendrite* test to strike the balance between the rights of anonymous speech and the rights of the party seeking the identity); *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999) (requiring seeking party to establish that seeking party has an actionable cause of action against the

demonstrate that the underlying speech is in fact unlawful or actionable, courts have held that, at a minimum, the party seeking to "out" an anonymous speaker whose speech relates to a matter of public concern must show "a reasonable probability or reasonable possibility" of success on his or her claim.[78]

The district court erred as a matter of law in failing to apply any of the tests used by courts to weigh a speaker's First Amendment rights against competing interests in disclosure. Further, and as set forth below, the district court's refusal to quash the subpoena to The Times-Picayune was erroneous because Defendant failed to show that the comments by "aircheck" and "jammer1954" – whoever they might be – had any effect on her indictment.

---

anonymous person that can withstand a motion to dismiss); *Sony Music Entm't Inc v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004) (applying the four *Dendrite* factors); *Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) (relying on the standards articulated in *Dendrite* and *Seescandy.com*); *Cahill*, 884 A.2d at 460 (applying the notice and *prima-facie Dendrite* requirements); *Quixtar Inc v. Signature Mgmt. Team, LLC*, 566 F. Supp. 2d 11205, 1211 (D. Nev. 2008) (analyzing the *Dendrite* and *Cahill* standards); *Pilchesky v. Gatelli*, 2011 PA Super 3, 12 A.3d 430, 442 (Pa. Super. Ct. 2011) (applying a four-part test under the *Dendrite* and *Cahill*).

[78] *Seescandy.com*, 185 F.R.D. at 579 (requiring seeking party to establish that it has an actionable cause of action against anonymous person that can withstand a motion to dismiss); *Doe I v. Individuals*, 561 F. Supp. 2d at 256 (requiring plaintiff to establish a *prima facie* case of libel in order to unveil the identity of anonymous defendant); *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 564 (requiring plaintiff to make a concrete showing of a *prima facie* claim for copyright infringement to identify anonymous defendants); *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154 (Ca. 2008) (requiring plaintiff to make a *prima facie* showing of defamation to reveal identity of anonymous Internet commenters); *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 450 (2009) (requiring plaintiff to establish enough facts to support his claim as to survive a motion for summary judgment); *In re Baxter*, 01-00026-M, 2001 WL 34806203 at *12 (finding that the "proper standard should be. . . a showing of at least a reasonable probability or reasonably possibility of recovery on the [claim]") (citing *Global Telemedia Intern., Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001) (requiring a showing of a probability of success on the merits where free speech on a public issue is involved)).

**iv. The comments, even if made by federal officials, would only be relevant if Defendant could demonstrate that they prejudiced her indictment.**

The United States Supreme Court has held that "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]."[79] This Court has explained that even upon a showing of the "most egregious prosecutorial misconduct," an indictment may only be dismissed upon proof of actual prejudice, "when prosecutorial misconduct amounts to overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury."[80]

Likewise, dismissal of an indictment based on bias of the grand jury caused by publicity "is an extreme remedy," and the defendant's burden "is a heavy one:"

> The cases which have considered the question of preindictment publicity and its effect on the grand jury, rather than holding that preindictment publicity is inherently prejudicial and cause for dismissal of the indictment, have held that the defendant must show specifically that such publicity caused prejudice and bias in the grand jurors and that the indictment returned was the result of essential unfairness.[81]

These principles apply even if, as Defendant alleges, the government engendered the pretrial publicity.[82] In *Civella*, government officials gave interviews to the press, which resulted in a five-part article series in the local

---

[79] *Bank of Nova Scotia v. United States*, 108 S.Ct. 2369, 2373 (1988).
[80] *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir. 1982).
[81] *United States v. Civella*, 648 F.2d 1167, 1173 (8th Cir. 1981) (quoting *United States v. Anzelmo*, 319 F. Supp. 1106, 1113 (E.D. La. 1970)).
[82] *Id.*

30

newspaper.[83]   Additionally, the FBI issued press releases.[84]   As in this case, the

defendant alleged that the releases of information were "orchestrated" with the

intent to "create in the public mind a favorable image of the forces of prosecution

and highly prejudicial image of the Defendants under investigation," and amounted

to a denial of due process and a violation of Department of Justice Regulation 28

C.F.R. § 50.2, relating to the release of certain types of prejudicial information.[85]

The court rejected this argument finding that "[i]t is the prejudicial effect of pre-

indictment publicity, rather than its source, which is significant consideration in

determining whether an indictment should be dismissed."[86]

In sum, the anonymous comments, which clearly constitute political speech,

could only be relevant if Defendant could demonstrate that they prejudiced her

indictment.  As shown further below, Defendant did not show that the comments of

"aircheck" and "jammer1954," even if made by federal officials, prejudiced her

indictment.  As a result, the court's order compelling disclosure was erroneous.

> **v.    The district court erred in failing to make a threshold finding that the speech was unlawful before it balanced the interests in disclosure against the speakers' First Amendment rights.**

As an initial matter, although Defendant's pleadings (and to some degree the

magistrate judge's order) focus on the unacceptable conduct by certain Assistant

---

[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.* at 1174.

U.S. Attorneys outlined in *United States v. Bowen, et al.*, the subpoena at issue here was not grounded in a broad inquiry into wrongdoing within the U.S. Attorneys' Office.  Rather, the subpoena at issue must be analyzed in the context of whether the information sought will support Defendant's claim that online commenting in 2008 tainted the grand jury proceedings that resulted in her indictment in 2013.

As shown above, anonymous speech, and in particular political anonymous speech, is protected by the First Amendment.  Where a party seeks to unveil an anonymous speaker, a court must weigh the anonymous speaker's rights against the interests in disclosure.  To do that, courts typically apply a variant of a four-part test.  In analyzing that issue here, however, the district court[87] did not apply any of the tests articulated by courts before it – any of which would have required, as a threshold matter, a showing that the underlying speech is unlawful.  Under *Dendrite*, only **after** the district court finds that Defendant made a *prima facie* showing that the underlying speech is unlawful, should it conduct a balancing of "aircheck" and "jammer1954's" First Amendment right of anonymous speech against the strength of the *prima facie* case presented and the necessity for the disclosure of the anonymous individual's identity to allow the seeking party to

---

[87] References to district court are references to the magistrate judge because the district court's own order adapted the magistrate judge's ruling.

properly proceed.[88]

Instead, the district court used only the baseline standard in *Nixon* to hold

that the subpoena was proper under the three hurdles of "(1) relevancy; (2)

admissibility; (3) specificity."[89]  The district court determined that Defendant had

met those requirements in light of the district court's findings of prosecutorial

misconduct in an entirely separate criminal matter, *United States v. Bowen, et al.*,

No. 10-204 (E.D. La. 2013) (Rec. Doc. No. 1137).[90]  Even under this standard, the

district court's ruling was in error – the district court itself later determined that the

online commenting about Defendant did not prejudice her indictment.  As a result,

the "relevance" requirement of the *Nixon* test was absent.

Further, had the district court applied any of the standards that other courts

have adopted in cases involving the right of anonymous speech, from requiring

proof of a *prima facie* case[91] to requiring proof of a reasonable probability of

---

[88] *Dendrite*, 342 N.J. Super at 141-42.

[89] *Id.* (quoting *Nixon*, 94 S. Ct. 3090).

[90] *Id.* at 3 "He noted that the right to anonymous speech is not unlimited, especially if the speaker is a prosecutor or other federal agent, who is subject to rules and regulations that restricts his or her ability to comment on ongoing investigations or cases pending within the scope of his or her official responsibilities. The magistrate judge discussed the recent experience in this jurisdiction where the former First Assistant and former Senior Litigation Counsel in the local United States Attorneys' Office admitted to blogging about ongoing investigations and cases on Nola.com, under certain aliases and others that they could not recall. He noted that after this conduct was revealed, "at least seven defendants and two investigation targets in three different proceedings [had] convictions [] overturned, [an] indictment [] dismissed or [] investigation [] dropped." The magistrate judge ruled that, in light of such conduct, there was a "sufficient likelihood" that the subpoena at issue would lead to information relevant to Jackson's prosecutorial misconduct claim."

[91] *Dendrite*, 342 N.J. Super. at 141-42.

success,[92] it would have appreciated that Defendant could not make a threshold showing of entitlement to the information she seeks. Defendant claimed that in light of discoveries of prosecutorial misconduct in *Bowen*, if "aircheck" and "jammer1954" are federal law enforcement officials, their comments would support a motion to dismiss her 2013 indictment based upon: alleged violation of Rule 6(e); alleged prosecutorial misconduct undermining her due process rights; and alleged selective prosecution on the basis of race. However, in order for a court to dismiss Defendant's indictment for prosecutorial misconduct, Defendant was required to not only to show that there was "egregious prosecutorial misconduct," but also that there was "actual prejudice" to her as a result of the misconduct.[93]

Defendant did not make this showing. Defendant's claim that two comments made in 2008 impacted her indictment in 2013, which was issued by a grand jury impaneled in 2012 was pure speculation. There is no basis, and Defendant offered none, for the supposition that two of the numerous comments made below an article published on Nola.com in 2008 affected a grand jury proceeding almost five years later. Indeed, the district court, after granting disclosure of identifying information of "aircheck" and "jammer1954" reached the

---

[92] *In re Baxter*, 01-00026-M, 2001 WL 34806203 *12.
[93] *McKenzie*, 678 F.2 at 631.

same conclusion.[94]

The substance of the comments also did not support dismissal of Defendant's indictment on the basis of a due process violation. The comments did not involve Fed. R. Crim. P. 6(e) grand jury secrecy violations. They made no mention of race. Most importantly, the comments were virtually indistinguishable from those made by other anonymous commenters in content, language, and tone. For example, while Defendant argued that the comments contained "prosecutorial lingo," the same lingo such as "subpoena" "singing" and "scum" was used by other posters in prior comments in the same article.[95] Also, in other news articles concerning Defendant and NOAH, very similar comments were made by posters, not "aircheck" or "jammer1954:"[96]

> **(1) 8/2/2008, 9:34:17 AM:**
> *We can only pray that **Stacey E. Jackson** sings like a canary and turns in every corrupt contractor, Cedric Smith AND C RAY NA-GONE!*[97]
> **(2) 8/5/2008, 9:33:14 AM:**
>     ***Stacey,***
> *Time to get your affairs in order and I hope you look good in stripes.*[98]
> **(3) 8/5/2008, 9:26:17 AM:**
> *Here could be some of the final tally: **Stacey E. Jackson**, former Exec. director of a non-profit that personally profited from everyone, Hall guy, Sterling Doucette, Cedric Smith, Ed Shanklin, Shernita Dial,*

---

[94] Rec. Doc. 158 "Orders and Reasons Motion to Dismiss."

[95] *See supra* pp. 16-17; ROA.100-15. As an aside, it is difficult to see how words like "singing" and "scum" are words uniquely associated with prosecutors. Also, the word "subpoena" appeared in the headline of the article.

[96] All of these comments were included in "Comment Letter." ROA.355.

[97] *New Orleans home rehab operation suspended*, The Times-Picayune (August 1, 2008).

[98] *NOAH chief allowed her own property to molder*, The Times-Picayune (August 4, 2008).

*the number 2 contractor guy who owns a clothing store with **Stacey**, and of course the Mayor, C. Ray Na-Gone.*[99]

**(4) 8/7/2008, 7:42:13 AM:**

*Liberty Bank (Ann Duplesis) will be exposed . I bet **Jackson** got all her loans from Liberty because the bank KNEW the money would be repaid because it was being stolen from the taxpayers. Most of Liberty Bank's business loans are payments from taxpayers instead of borrowers like **Jackson**. It's a big SCAM.*[100]

**(5) 8/7/2008, 4:26:32 AM:**

*Damn ashamed volunteers from all over America came to NOLA to get scammed into spending their personal time and sweat helping criminal scum like **Stacey Jackson** and her rigged contractor cronies...*

*Hopefully there's a special place in hell for her types.... Criminal female thugster-scum.,*

*TO **Stacey** and her "kind" -Thanks for keeping NOLA constantly screwed over!*[101]

**(6) 8/7/2008, 4:20:57 AM:**

***Stacey "ring leader" Jackson** will get fried by the feds.*

*She'll use the B.S. defense "I didn't know any one did any thing wrong!" - and this won't cut it in front of a jury.*

*Also, her rigged contractors are going to take a legal hit also!!!!*

*She's a NOLA style criminal female-thugster.*[102]

**(7) 8/6/2008, 11:43:10 PM:**

*This will go a lot deeper than this **Stacey Jackson**. She's just a tiny spoke in a giant wheel. There will be lots of things uncovered if this investigation is handled the way it should be handled. Money paid to people of influence. Kickbacks the likes of which we haven't seen in some time. This city is famous for this type of thing, folks; it's just the way they do things down here. Just another version of "the good old boy" game.*[103]

In light of the foregoing, it is clear that even if "aircheck" and

"jammer1954" were federal officials, their comments could not have been found to

---

[99] *Id.*

[100] *Relief group saw no shortage of volunteers*, The Times-Picayune (August 6, 2008).

[101] *Id.*

[102] *Facing investigation, NOAH terminates employees*, The Times-Picayune (August 6, 2008).

[103] *Id.*

have any impact whatsoever on Defendant's indictment almost five years later, much less entail "egregious prosecutorial misconduct" that overbore the "will of the grand jury."[104]    And, it bears mention that the district court ultimately concluded that "jammer1954" was not a federal prosecutor.[105]

Had the district court required Defendant to make a threshold showing that the speech at issue could have possibly prejudiced the grand jury proceedings that resulted in Defendant's indictment, it would not have weighed the competing interests in a vacuum, and would not have concluded that the interests in disclosure outweighed the anonymous posters' First Amendment rights.  The district court's legal analysis and its order compelling disclosure of identifying information regarding "aircheck" and "jammer1954" should be vacated.

### vi.    The district court erred in holding that an *in camera* review is sufficient to protect First Amendment anonymous speech rights.

The district court erred in holding that an *in camera* review was adequate to protect the anonymous posters' First Amendment rights under *Nixon*[106] without first conducting a threshold inquiry into the propriety of infringement.

*Nixon* did not establish a universal standard for protection of all privileges through an *in camera* review; rather, the Supreme Court found that an *in camera*

---

[104] *Id.*

[105] ROA.722.

[106] ROA.374. ("Indeed, the <u>Nixon</u> Court found that an in camera inspection of the requested material was warranted when the President claimed an executive privilege in an attempt to defeat a Rule 17 subpoena.")

review was warranted only after applying a threshold showing to overcome the executive privilege which was asserted by President Richard Nixon.[107]    That showing required the district court to treat the subpoenaed material as presumptively privileged and required "the Special Prosecutor to demonstrate that the Presidential material was essential to the justice of the (pending criminal) case."[108]    Here, the district court ordered an *in camera* review before making any threshold showing that the underlying speech was unlawful and could support a viable motion to dismiss Defendant's indictment.    Thus, the district court erroneously relied upon *Nixon* to support its conclusion that First Amendment interests could be adequately safeguard without first making the threshold finding that the speech was unlawful and relevant.

Furthermore, courts have found that forced *in camera* reviews impermissibly infringes on First Amendment rights absent a preliminary showing of need by the defendant.[109]    The Supreme Court, interpreting disclosure of attorney-client privileged materials, has similarly held that a threshold showing must be made

---

[107] *Nixon*, 418 U.S. at 713-14.

[108] *Id* (internal quotation marks omitted).

[109] *See New York Times Co. v. Jascalevich*, 439 U.S. 1331, 1335 (1978) (Marshall, J., in chambers) (on reapplication for stay) ("Given the likelihood that forced disclosure even for in camera review will inhibit the reporter's and newspaper's exercise of First Amendment rights I believe that some threshold showing of materiality, relevance, and necessity should be required."); *United States v. Cuthbertson*, 630 F.2d 139, 148 (3d Cir. 1980) ("We agree with CBS that an order for production of privileged materials for in camera review may not be based solely on the defendants' request for the material."); *United States v. Gambino*, 741 F. Supp. 412, 415 (S.D.N.Y. 1990) ("It is certain that some threshold showing of materiality, relevance, and necessity should be required before conducting an camera review.").

before any *in camera* review can be conducted.[110]  The Court, when presented with the issue of privilege of military secrets and the competing interests of public disclosure, found that "examination of the evidence, even by the judge alone, in chambers" might in some cases "jeopardize the security which the privilege is meant to protect."[111]  The Court further observed that, "[t]oo much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect," and that "[t]here is also reason to be concerned about the possible due process implications of routine use of *in camera* proceedings."[112]

Here, the district court erred in not recognizing that disclosure of any kind, including *in camera* constitutes irreparable loss of the anonymous posters' First Amendment rights.  While an *in camera* disclosure is arguably less invasive than a public disclosure, in this case, protected and identifying information relating to "aircheck" and "jammer1954" was nonetheless produced to the district court, employees of the court, and other individuals who responded to investigative efforts of the district court.[113]  Those disclosures violated the First Amendment rights of The Times-Picayune and of "aircheck" and "jammer1954" because the district court failed to require as a perquisite to compel disclosure a showing that the comments were unlawful and relevant.

---

[110] *United States v. Zolin*, 491 U.S. 554, 109 S. Ct. 2619, 105 L.Ed. 2d 469 (1989).
[111] *Id*. at 570 (citing *United States v. Reynolds*, 345 U.S. 1, 73 S. Ct. 528, 97 L.Ed. 727 (1953)).
[112] *Id*. at 570-71.
[113] ROA.692-93; Rec. Doc. 149 "Sealing Order."

## CONCLUSION

For all of the foregoing reasons, The Times-Picayune asks this Court to agree that the district court's legal analysis was flawed and that there is no basis for a finding that the speech in question is unlawful and that the speech could have possibly prejudiced the grand jury proceedings that resulted in Defendant's indictment; agree that an *in camera* review is insufficient under the circumstances to protect the anonymous speakers' First Amendment rights; reverse and vacate the district court's order; and order that the records be returned.

Respectfully submitted,

_____*/s/ Loretta G. Mince*_____
Loretta G. Mince, #25796
Rebecca Sha, #35317
FISHMAN HAYGOOD PHELPS
  WALMSLEY WILLIS & SWANSON, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana  70170-4600
Telephone:  (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for The Times-Picayune, L.L.C.*

40

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I caused the foregoing brief to be filed electronically with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Edward Joseph Castaing, Jr.
Crull, Castaing & Lilly
Pan American Life Center
601 Poydras Street, Suite 2323
New Orleans, LA 70130

Deborah A. Pearce
Appellate Law Offices of Deborah A. Pearce
141 Robert E. Lee Blvd #242
New Orleans, LA 70124

Fred Patrick Harper, Jr.
Sharan E. Lieberman
Kevin G. Boitmann
Diane Hollenshead Copes
United States Attorney's Office
650 Poydras Street, Suite 1600
New Orleans, LA 70130

*/s/ Loretta G. Mince*
Loretta G. Mince, #25796
Rebecca Sha, #35317
FISHMAN HAYGOOD PHELPS
  WALMSLEY WILLIS & SWANSON, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for The Times-Picayune, L.L.C.*

Date: June 5, 2014

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains only 10,450 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point, Times New Roman font in text and 12-point Times New Roman font in footnotes.


    */s/ Loretta G. Mince*

    Loretta G. Mince, #25796
    Rebecca Sha, #35317
    FISHMAN HAYGOOD PHELPS
       WALMSLEY WILLIS & SWANSON, L.L.P.
    201 St. Charles Avenue, 46th Floor
    New Orleans, Louisiana  70170-4600
    Telephone:  (504) 586-5252
    Facsimile: (504) 586-5250
    *Attorneys for The Times-Picayune, L.L.C.*

Date: June 5, 2014